## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

SAIDRICK TIWON PEWITTE,                )
                                       )
      **Petitioner,**                  )
                                       )
v.                                     )       No. 1:16-cv-01259-STA-jay
                                       )
SHAWN PHILLIPS,                        )
                                       )
      **Respondent.**                 )

## ORDER DENYING § 2254 PETITION,
## DENYING CERTIFICATE OF APPEALABILITY,
## AND
## DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Saidrick Pewitte has filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  For the reasons that follow, the Petition is **DENIED**.

## BACKGROUND

In September 2012, a Madison County, Tennessee, grand jury charged Pewitte with possession of cocaine with intent to sell or deliver, possession of a schedule III controlled substance with intent to sell or deliver, and possession of a deadly weapon with intent to employ the weapon in the commission of a dangerous felony.  (ECF No. 13-1 at 6-12.)  At the jury trial in January 2013, Jackson Police Department Investigator Samuel Gilley testified that, pursuant to a warrant, his team conducted a search of the defendant's home on October 5, 2011.  *State v. Pewitte*, No. W2013-00962-CCA-R3CD, 2014 WL 1233030, at *1 (Tenn. Crim. App. Mar. 25, 2014), *perm. appeal denied* (Tenn. June 20, 2014).  Immediately prior to the search, Gilley

observed Pewitte's step-father Curtis Goyer and Pewitte's cousin Christian Ellison enter the home. *Id.* The police then forcibly entered the house, and observed the defendant "sitting on his bed" in a room that was adjacent to, and down several steps from, the kitchen. *Id.* Police detained Ellison "on the small staircase that led into the kitchen" and detained Goyer near the front door. *Id.*

During the search officers discovered the following items on the nightstand in Pewitte's bedroom: "two bags of cocaine that were wrapped individually" in plastic bags, "a clear plastic bag that had nine Lortab pills and three Vicodin pills . . . tied up in like a sandwich baggy," and "a box of sandwich bags." *Id.* at *1-2. Inside the nightstand drawer the police discovered "a loaded .38 [caliber] revolver," a holster, and "some bullets and a wallet with $667 in cash and the Defendant's Social Security card." *Id.* at *2. "The police also seized a plastic bag containing twenty-seven rounds of ammunition for a .38 caliber revolver from the Defendant's bedroom cabinet," and "[n]ear these bullets, there was a Crown Royal bag containing $1,395 in cash." *Id.* "[T]wo large bags of cocaine [were] recovered from a kitchen cabinet." *Id.* The police also found "a blue bag . . . on the stairs . . . going from th[e] bedroom area up to the kitchen that had digital scales, some spoons, [and] some plastic bags that had . . . the corners twisted off." *Id.* "Some of the[se] items had [a] white powdery residue." *Id.* On cross-examination, Gilley stated that "the Defendant reported having knee problems and required assistance from a wheelchair when the police took him out of the residence." *Id.* A forensic scientist testified that the substances found in Pewitte's home were cocaine and tablets containing "hydrocodone, a Schedule III controlled substance." *Id.* at *3.

Jackson police sergeant Phillip Kemper "testified that he . . . took a statement from the Defendant during the search of the residence." *Id.* The statement, which was read into the record, "contained, in pertinent part," Pewitte's assertions that "[t]he powder and pills on the table by my bed belonged to me because I am in a lot of pain and I have a drug problem," that the gun was for self-protection due to "some bad things [that] have gone on in my neighborhood," and that the money in the nightstand was from a "disability check." *Id.*

Ellison testified that immediately prior to the search he noticed the police outside the house that belonged to his uncle, and at which the defendant resided. *Id.* The witness "'took off into the house' to tell [Pewitte] that the police were outside." *Id.* at *3. "[W]hen he told the Defendant about the police, the Defendant threw a purple Crown Royal bag at him," which "hit him in the chest and fell onto the steps" that led to the bedroom. *Id.* Ellison noticed that "[a] white compact substance fell out of the bag onto the floor along with some bags and a scale." *Id.* "[B]ecause he wanted to help his cousin," he "grabbed the drugs and 'threw them into the cabinet.'" *Id.* Ellison denied that "the drugs and other items . . . belong[ed] to him." *Id.* He also testified that, as a result of knee surgery, Pewitte "was confined to the hospital bed in his room for months" and was taking medication to reduce pain. *Id.*

Goyer testified that he owned and lived in the house that was searched and that the Defendant had been living with him for several years. *Id.* at *4. He confirmed that Pewitte had surgery on his legs and had been "stay[ing] in a hospital bed in the den." *Id.* Although "he was not aware of drugs in his house on the day of the search," he stated that "he had previously observed the Defendant use small packets of cocaine on at least two occasions." *Id.* Goyer also testified that Pewitte "obtained [the gun] after his injury" and that he was receiving "monthly

disability check[s] of '$800 or $900'" and had secured a loan for "about $1,500" prior to the search.  *Id.*  The witness "was also aware that the Defendant took 'lots of medication.'"  *Id.*

"The Defendant chose not to testify and the defense did not present any proof at trial." *Id.*  The jury returned guilty verdicts on all counts, and Pewitte was sentenced as a multiple offender to "an effective sentence of twenty-eight years in the Department of Correction."  *Id.* On direct appeal, he challenged the sufficiency of the evidence to convict him of the offenses. *Id.* at *5.  After the Tennessee Court of Criminal Appeals affirmed the judgment, *see id.* at *8, the Tennessee Supreme Court denied permission to appeal (*see* ECF No. 13-20).

Petitioner filed a *pro se* post-conviction petition in state court asserting claims of attorney ineffective assistance (ECF No. 13-13 at 3-34), which was amended several times by appointed counsel (*id.* at 49-50, 53-54, 57-58).  Following an evidentiary hearing (ECF No. 13-16), the post-conviction trial court denied relief in a written decision.  (ECF No. 13-13 at 63-66.)  The Tennessee Court of Criminal Appeals affirmed the judgment, and the Tennessee Supreme Court denied permission to appeal.  *Pewitte v. State*, No. W201500883CCAR3PC, 2016 WL 1719432, at *8 (Tenn. Crim. App. Apr. 27, 2016), *perm. appeal denied* (Tenn. Aug. 19, 2016).

## DISCUSSION

In September 2016, Pewitte filed his Petition, asserting that the Tennessee Court of Criminal Appeals was unreasonable in rejecting his evidence-sufficiency and attorney-ineffective-assistance claims.  (ECF No. 1 at PageID 5-7.)  Respondent, Shawn Phillips, filed the state-court record (ECF No. 13) and an answer (ECF No. 14) to the Petition, in which he argues that Petitioner's claims are without merit.  Pewitte filed a reply, maintaining that he is entitled to relief.  (ECF No. 23.)

## I.  Legal Standards

### A.  Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court."  *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case."  *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs

where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

### B.  Insufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *See Desert Palace, Inc., v. Costa*, 539 U.S. 9, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

The AEDPA adds a layer of deference to *Jackson*'s already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

### C. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v.*

*Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693)

(citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Under AEDPA, a state court must be granted a deference and latitude that are not in operation in a case involving direct review under *Strickland*. A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of that decision.

*Id.* at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

## II.     Claim 1

Petitioner asserts that the evidence was insufficient to establish that he committed the drug and firearm offenses. He argues, specifically, that Ellison and Goyer's testimonies, and his written statement to the police, support the conclusion that he possessed the drugs for personal use to combat pain, and possessed the gun to protect himself from crime. (ECF No. 1 at 5; ECF No. 1-1 at 8-14.) Pewitte raised the argument pertaining to the witnesses' testimonies on direct appeal (*see* ECF No. 13-8 at 12-13), but the state appellate court rejected it, *see Pewitte*, 2014 WL 1233030, at *6-9.[1] Respondent argues that Pewitte is not entitled to relief on his evidence-sufficiency claim because the state court's decision easily meets the AEDPA's deferential standards.

To sustain the convictions for possession of cocaine and hydrocodone, the State had to prove that Pewitte knowingly possessed those substances "with intent to manufacture, deliver, or sell" them. Tenn. Code Ann. § 39-17-417(a)(4). The firearm offense required proof that

---

[1]     On direct appeal, Petitioner did not present the argument pertaining to his written statement. (*See* ECF No. 13-8 at 12-13.) Although the argument is procedurally defaulted, Respondent did not raise this affirmative defense.

Petitioner possessed "a firearm with the intent to go armed during the commission of a dangerous felony." *Pewitte*, 2014 WL 1233030, at *6 (citing Tenn. Code Ann. § 39-17-1324(a)). "The possession of cocaine with the intent to sell or deliver is considered a 'dangerous felony.'" *Id.* (citing Tenn. Code Ann. § 39-17-1324(i)(1)). "'[T]he necessary intent to support a conviction for carrying a weapon with the intent to go armed may be proved by the circumstances surrounding the carrying of the weapon." *Id.* at *8 (quoting *Cole v. State,* 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976)).

On direct appeal, the Tennessee Court of Criminal Appeals set forth *Jackson*'s evidence-sufficiency standards, discussed the proofs required to convict Pewitte of the drug and firearm offenses, reviewed the evidence adduced at trial, and rejected the defendant's argument that the evidence was insufficient to sustain the convictions. *Id.* at *5-8. The appellate court reasoned that, despite Ellison and Goyer's testimonies that Pewitte had been taking pain medication following knee surgery, and Goyer's testimony that his stepson had taken out a loan from a bank and was receiving monthly disability checks, the jury could infer an intent to sell the drugs from the surrounding circumstances. *Id.* at *7-8. Those circumstances included, among other things, "law enforcement['s] recover[y of] one package of cocaine weighing over 48.04 grams, an open box of sandwich bags in a nightstand in close proximity to cocaine and painkillers, a digital scale, and spoons and plastic bags with 'white powdery residue' on them." *Id.* at *7. In addition, the hydrocodone pills were of "three different types," and were found "in a plastic bag near cocaine, sandwich bags, and a firearm rather than in a prescription bottle consistent with a theory of lawful possession." *Id.* at *8.

As for the firearm charge, the appellate court concluded, based on circumstantial evidence, that "a rational trier of fact could find the Defendant guilty of possession of a firearm with the intent to go armed during the commission of a dangerous felony." *Id.* at *8. Specifically, the jury could infer Pewitte's intent from the fact that "a loaded .38 caliber revolver" was found next to a large amount of cash in the same nightstand which held the drugs and the box of sandwich bags, and that "twenty-seven rounds of ammunition for a .38 caliber revolver" were discovered in the bedroom, in a bag which also contained "$1,395 in cash." *Id.*

The Tennessee Court of Criminal Appeals correctly identified *Jackson*'s evidence-sufficiency standards and applied them to the facts of Petitioner's case. Petitioner thus cannot show that the appellate court's evidence-sufficiency determination is "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Pewitte has also failed to establish that the appellate court's conclusions, and the factual findings on which they are based, are unreasonable. First of all, he does not identify any clear and convincing evidence to undermine the factual determinations regarding what was found in his home during the search, and where those items were located. Secondly, as the appellate court noted, those items and their placement within the home give rise to the reasonable inference that Pewitte possessed the drugs with the intent to sell them, and possessed the firearm with intent to commit a dangerous felony. Petitioner cannot establish that the state appellate court's decision is unreasonable by simply pointing out evidence that would support contrary inferences—to wit, his written statement to police and Ellison and Goyer's testimonies regarding the cash and his

12

drug use. The jury resolved the competing inferences in the State's favor, and, consistent with *Jackson*'s commands, the appellate court gave "full play" to the jury's decision. *Jackson*, 443 U.S. at 319.

In sum, the TCCA's evidence-sufficiency rulings are not contrary to clearly established Supreme Court law, based on unreasonable factual determinations, or the result of an unreasonable application of clearly established law to the facts. Claim 1 is therefore **DENIED**.

## III.    Claim 2

Petitioner asserts that trial counsel rendered ineffective assistance by (1) failing to investigate whether he had valid prescriptions for Lortab and Vicodin (Claim 2A), (2) failing to adequately cross-examine Ellison and Gilley (Claim 2B), (3) failing to "challenge whether the affidavit, on which the search warrant was issued, established probable cause" (Claim 2C), and (4) "fail[ing] to object to prejudicial comments by the prosecutor during closing arguments that inferred [sic] to the Petitioner's decision not to testify" (Claim 2D). (ECF No. 1-1 at 17-31.) He unsuccessfully pursued all of these arguments on appeal from the denial of post-conviction relief. *See Pewitte*, 2016 WL 1719432, at *6-8. Respondent maintains that the state appellate court's rejection of the arguments was not unreasonable. The Court agrees.

The Tennessee Court of Appeals correctly identified the ineffective-assistance-of-counsel standards set forth in *Strickland* and applied them to the facts of Petitioner's case. *See id.* at *7-8. Therefore, its determination that counsel did not render ineffective assistance in any of the ways alleged is not "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406.

In addition, for the reasons discussed below, the TCCA's factual determinations and its application of *Strickland's* standards to those facts are not unreasonable.

## A. Claim 2A: Investigation of Prescriptions

In his post-conviction appeal, Petitioner argued that his trial counsel "was ineffective in his representation as he failed to investigate known and available evidence, which would have demonstrated that the prescription drugs, Vicodin and Loratab [sic], were being used for legitimate medical conditions and not with any criminal intent as he had recently undergone bilateral knee surgery." (ECF No. 13-17 at 18.) In rejecting the argument, the Tennessee Court of Criminal Appeals deferred to the lower court's determination that trial counsel had credibly "testified that he had fully attempted to locate any valid prescriptions that [petitioner] *may* have had for the 12 pills of Vicodin or Lortab in the months prior to October 5th, 2011, which was the date that the search warrant was executed and the pills were recovered." *Pewitte*, 2016 WL 1719432, at *7 (emphasis in original). Based on that testimony, the appellate court agreed with the post-conviction trial court's conclusion that counsel had not performed deficiently with regard to his investigation into a lawful source for the hydrocodone pills. *Id.* at *8.

Petitioner has failed to show that the decision is based on unreasonable factual determinations, or an unreasonable application of *Strickland*'s standards. Under *Strickland*, an attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Petitioner maintains that counsel did not adequately investigate the purported lawful source of the pills. He points out that he testified at the post-conviction hearing that the hydrocodone pills seized during the search had been prescribed to combat pain he experienced following bi-lateral

14

knee surgery, and that he told this to his attorney.  (ECF No. 1-1 at 19 (referencing testimony at ECF No. 13-16 at 7-8).)  He also insists that a letter from his doctor, which was submitted into evidence at the post-conviction hearing, corroborates his testimony.  (*Id.*)  The letter explains that the surgery occurred in July 2010, and that the doctor had prescribed hydrocodone for Pewitte's post-surgery pain "on several occasions around that period (and before October 5, 2011)."  (ECF No. 13-14 at 2.)

Petitioner's testimony and the doctor's letter are not clear and convincing evidence undermining the state court's determination that counsel conducted a thorough investigation into the hydrocodone pills.  The letter only establishes that hydrocodone was prescribed immediately following a surgery that took place more than a year before the search was conducted, and at some unspecified time "before October 5, 2011."  The letter, therefore, does not necessarily contradict counsel's testimony that he could not locate prescriptions issued in the weeks leading up to the search in October 2011.  The post-conviction trial court credited counsel's testimony, not Petitioner's, about the investigative efforts undertaken, and the appellate court reasonably refused to disturb that credibility finding.

In light of counsel's testimony that he tried to locate valid prescriptions during the relevant time frame, the state appellate court's conclusion that counsel did not perform deficiently is patently reasonable.  Claim 2A is therefore **DENIED**.

### B.  Claim 2B: Cross-examination of Witnesses

In his state post-conviction proceedings, Petitioner argued that his trial counsel "failed to utilize [a] prior inconsistent statement to impeach the state's witness, Christian Ellison," and also failed to "adequately cross examine Investigator Samuel Gilley with the Jackson Police

Department." (D.E. 13-17 at 19, 21.) Petitioner testified at the post-conviction hearing that Ellison's trial testimony that Pewitte "threw a purple bag at him that hit him in the chest and the cocaine fell out and he (Mr. Ellison) picked it up and placed it in the cabinet" was inconsistent with Ellison's written statement to police "that 'Saidrick handed me a bag of cocaine and I put it in the cabinet.'" (*Id.* at 19.) Regarding Gilley, Petitioner argued that the investigator "testified that he observed a white truck pull up and [Goyer] and Christian Ellison got out of the truck, walk[ed] [to] the residence and close[d] the door," but that Gilley stated in his report that "the two (2) males ran into the house." (*Id.* at 21.)

The post-conviction trial court "reviewed the specific portions relative to the direct examination and cross-examination of State's witnesses, Christian Ellison and Investigator Samuel Gilley." (ECF No. 13-13 at 64 (emphasis omitted).) The court held that counsel did not provide ineffective assistance because he "properly cross-examine[d] the State's witnesses and . . . attempt[ed] to discredit their testimony, particularly Christian Ellison and Investigator Samuel Gilley," and because no prejudice resulted from counsel's performance. (*Id.* at 65.) Pewitte appealed, and the Tennessee Court of Criminal Appeals summarily, but explicitly, adopted the post-conviction trial court's findings and rationale for rejecting the claim. *Pewitte*, 2016 WL 1719432, at *8.

The state appellate court's decision is not based on an unreasonable determination of the facts, or an unreasonable application of *Strickland*'s standards to those facts. The trial record shows that counsel cross-examined Ellison about his testimony that Pewitte "threw" the purple bag at him:

> Q. Mr. Ellison, I'm going to pass something up to you and if you could look at this and tell me if this looks familiar to you?

16

A. It looks familiar.

Q. Is that your written statement that you gave to the police?

A. Yeah. I see where I –

Q. Well, let me back up a little bit. It was October 5th, 2011 you gave that statement; right?

A. I guess it was. It's been so long ago.

Q. The last sentence there, don't read it out loud, read it to yourself. Let me know when you've had a chance to do that.

Have you had a chance to do that?

A. (Witness nods.)

Q. Does it say anywhere in there about your cousin threw a purple bag at you?

A. No.

(D.E. 13-5 at 40.)

Counsel also questioned Gilley about the statement in his report that two people ran into

the house:

Q: Did the men did they just walk inside the house or run inside the house or what happened?

A. [A]s they were getting out of the truck we pulled [up] and they kind of looked over and saw us and kind of ran into the house.

Q. Okay. So Mr. Ellison and then Mr. Goyer, they both ran inside the house?

A. I ain't going to say they ran. They hurried up. . . .

Q. If your report says that you encountered two male suspects in the front yard who ran inside the house, would that be correct?

A. Yes, sir.

(D.E. 13-4 at 62-63.)

Based on this record, the state court's conclusion that counsel's performance fell "within

the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, was not

unreasonable.  Petitioner also has not pointed to anything to suggest a reasonable probability that further efforts to impeach the witnesses on the minor inconsistencies in their statements would have resulted in a different trial outcome.  Accordingly, the state court's conclusion that counsel did not provide ineffective assistance does not reflect an unreasonable application of *Strickland* to the facts.  Claim 2B is DENIED.

### C.  Claim 2C: Motion to Suppress

Petitioner argued in his state post-conviction proceedings that his trial counsel "should have challenged the search warrant that was executed at his residence prior to his arrest."  (D.E. 13-17 at 14.)  He testified at the evidentiary hearing that Investigator Gilley's affidavit in support of the search warrant,

> . . . says a confidential source seen me in possession of cocaine within 72 hours, but there was no controlled buy.  There was no surveillance.  There was no proof there even was a confidential informant or source.  There was no specific proof in there that proved that I had committed any kind of crime or done anything wrong. It was just somebody said or what they made up that somebody said.  There's no proof this even existed.

(D.E. 13-16 at 14-15.)

Trial counsel testified that he reviewed the supporting affidavit and concluded that it alleged probable cause.  (*Id.* at 62.)  He recalled that the affidavit,

> confirmed . . . that or the informant supposedly said that he saw Mr. Pewitte with cocaine at [Pewitte's home] and . . . listed the fact that . . . the informant had led to a certain number of convictions and recovery of certain amounts of drugs and things like that.  I felt that was enough to corroborate what the informant supposedly told Investigator Gilley.

(*Id.* at 62-63.)  Counsel further testified that he "gave [Petitioner] a copy of the warrant and affidavit, and explained to him that it was a "good affidavit."  (*Id.* at 62.)

Finding Petitioner's claim to be "without merit," the post-conviction trial court "credit[ed] [trial counsel's] testimony . . . that in his professional opinion . . . there was no legitimate basis or grounds upon which to file a Motion to Suppress relative to the search warrant executed in this case." (D.E. 13-13 at 65.) Pewitte appealed that determination, and the state appellate court summarily, but explicitly, adopted the lower court's conclusion. *See Pewitte*, 2016 WL 1719432, at *8.

The decision of the Tennessee Court of Criminal Appeals is not based on an unreasonable determination of the facts. The lower court's credibility determination, which the appellate court did not disturb, is entitled to deference by this Court in the absence of clear and convincing contrary evidence in the record. *See Fargo v. Phillips*, 58 F. App'x 603, 607 (6th Cir. 2003) (holding "state court's determination that counsel's testimony was more credible than the witnesses' testimony was not unreasonable" where there was "no clear and convincing evidence to justify a rejection of the trial court's credibility finding"). Pewitte has not pointed to any clear and convincing evidence to undermine the credibility finding.

Based on the facts to which counsel credibly testified, the Tennessee Court of Criminal Appeals did not unreasonably conclude that counsel did not provide ineffective assistance in deciding not to file a motion to suppress. *See e.g.*, *Marshall v. Warden*, No. 17-1074, 2017 WL 3185191, at *3 (6th Cir. July 10, 2017) (unpublished) (where "[a] motion to suppress . . . would have been unsuccessful, . . . counsel did not perform deficiently by failing to pursue one") (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).[2]

---

[2]    Among the reasons Respondent presents in support of his argument that the state appellate court's decision is not unreasonable is the fact that "Petitioner . . . failed to introduce into evidence [at the post-conviction hearing] a copy of the search warrant and the supporting

For all of these reasons, Petitioner has not shown that the TCCA's decision fails AEDPA review. Claim 2C is therefore **DENIED**.

### D. Claim 2D: Prosecutor's Closing Argument

In his state post-conviction proceedings, Petitioner argued that trial counsel rendered ineffective assistance by failing to object to a comment the prosecutor made during closing argument which allegedly impinged on his "fundamental right to choose not to testify." (ECF No. 13-17 at 20.) Petitioner testified at the post-conviction hearing that he recalled the prosecutor telling the jury that the defendant was "sitting there like a knot on a log because [he] wouldn't testify and . . . say [he] ha[d] proof about [a lawful source for] these pills . . . ." (ECF No. 13-16 at 16.) Counsel testified that he did not remember the prosecutor making that statement, but that, if the prosecutor had done so, it would have been "objectionable and the judge would have surely sustained that as well." (*Id.* at 64.) The post-conviction trial court reviewed the trial transcript and found that the prosecutor "did not improperly comment upon the defendant's decision not to testify at trial," and that, in any event, "petitioner has failed to show

_____

affidavit." (D.E. 14 at 21.) In his Reply, Pewitte takes issue with that argument, insisting that, under "*Strickland* and *Sutton*," he should not be bound by the failure of his post-conviction counsel to submit the affidavit at the hearing. (D.E. 23 at 22.) In *Sutton*, the Sixth Circuit held that *Martinez* applies to cases arising in Tennessee. *See Sutton v. Carpenter*, 745 F.3d 787, 795-96 (6th Cir. 2014). If Petitioner means to suggest that his post-conviction counsel's alleged ineffective assistance should excuse his failure to submit the warrant affidavit into evidence at the post-conviction hearing, the argument is rejected. *Martinez* holds that the ineffective assistance of post-conviction counsel may be cause to excuse the *procedural default* of a substantial claim of trial counsel ineffective assistance, *see Martinez*, 566 U.S. at 14, but Petitioner did not default his claim. Rather, he complains of a *default of proof*, as to which *Martinez* does not apply. *See Henderson v. Carpenter*, 21 F. Supp. 3d 927, 932-33 (W.D. Tenn. 2014) (citing *Moore v. Mitchell,* 708 F.3d 760, 785 (6th Cir. 2013) and *Dixon v. Houk*, 737 F.3d 1003, 1012 n.2 (6th Cir. 2013), *reh'g & reh'g en banc denied* (Jan. 29, 2014)).

that there is a reasonable probability that, but for trial counsel's performance, the result of the trial proceeding would have been different." (ECF No. 13-13 at 64, 65.)

Petitioner appealed the decision, maintaining that the comment was improper and that he was prejudiced by counsel's failure to object to it. (*See* ECF No. 13-17 at 15, 20.) In its brief before the Tennessee Court of Criminal Appeals, the State argued that "the prosecutor did not say," as Pewitte alleged, "that the [defendant] was sitting there like a bump on a log refusing to testify." (ECF No. 13-18 at 24.) Instead, the prosecutor was responding to a statement made by trial counsel at closing:

> *Defense counsel*: Now, one thing I want you to consider again is [the prosecutor] said "There's been no pharmacy records to contradict our proof." Remember, we don't have to prove anything to you. The State has to prove beyond a reasonable doubt that Mr. Pewitte is guilty of what he's charged with. In theory I can sit there and ask no questions of anybody. Nobody can testify other than the State's witnesses and if you still aren't convinced then you couldn't convict him. We don't have to prove anything. The State has the burden of proving Mr. Pewitte is guilty beyond a reasonable doubt.
>
> * * *
>
> *Prosecutor*: The defendant is right, he doesn't have to prove anything. He can sit over there like a stump and just not say anything. There were no pharmacy records, but there was also nothing to indicate common lawful use of prescription. No pill bottle. Doesn't everybody have a pill from their doctor have a pill bottle with their name on it? There wasn't one here. No pill bottle. Where are the pills? In a plastic bag wadded up wit[h] some other drugs.

(ECF No. 13-15 at 25, 26.)

The Tennessee Court of Criminal Appeals summarily, but explicitly, adopted the lower court's conclusion that the prosecutor's statement was not improper. *See Pewitte*, 2016 WL 1719432, at *8. The appellate court also agreed with the lower court that Petitioner was not prejudiced by counsel's failure to object to the comment. *See id*. The Tennessee Court of

Criminal Appeals therefore upheld the post-conviction trial court's ruling that counsel had not rendered ineffective assistance by failing to object to the prosecutor's statement. *Id.*

The Fifth Amendment to the United States Constitution, which establishes a criminal defendant's right not to testify at trial, forbids the prosecution from commenting on a defendant's decision to exercise that right.[3] *Griffin*, 380 U.S. at 615. In *Griffin*, the prosecutor made numerous references to the defendant's failure to testify, and the jury was instructed that it could consider the defendant's silence regarding "facts within his knowledge." *Id.* at 610. The Supreme Court held that the prosecutor's comments and the jury instructions violated the defendant's Fifth Amendment right not to testify. *Id.* at 615. The Court concluded that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Id.*

A *Griffin* violation "do[es] not constitute a structural error requiring automatic reversal." *Hall v. Vasbinder*, 563 F.3d 222, 235–36 (6th Cir. 2009) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 629, 638 (1993)). Therefore, on direct appeal, such violations are subject to harmless-error analysis, which requires the court to determine whether the error "was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967)).

On federal habeas review, *Chapman*'s harmless error standard does not apply. *Fry v. Pliler*, 551 U.S. 112, 116 (2007). Instead, the court must determine if the prosecutor's comment "had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 116, 112 (quoting *Brecht*, 507 U.S. at 631 (establishing harmless error standard on federal habeas

---

[3] The Fifth Amendment right against self-crimination is made applicable to "the States by reason of the Fourteenth Amendment." *Griffin v. California*, 380 U.S. 609, 615 (1965).

review for "constitutional error[s] of the trial type")). In cases where the federal habeas petitioner has alleged that counsel was ineffective for failing to object to the prosecutor's improper comment, "[t]he prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall*, 563 F.3d at 236 (citing *Kyles v. Whitley*, 514 U.S. 419, 436 (1995)).

As Respondent, here, points out, the prosecutor in Pewitte's case did not say that the defendant was sitting like a knot on a log because he would not testify that he had proof of a legal source for the pills. The trial transcript shows that the prosecutor agreed with defense counsel that the Defendant did not have to testify. (ECF No. 13-15 at 26.) He then argued that the evidence *supplied by the State*—i.e., the discovery of hydrocodone pills in baggies, not pharmacy bottles, sitting on a nightstand next to cocaine in baggies—suggested that it was not Pewitte's prescribed medicine. (*Id.*) The Tennessee Court of Criminal Appeals' determination that the comment was not improper is therefore not an unreasonable application of *Griffin*.

Even if the comment were constitutionally improper, fair-minded jurists could conclude that Petitioner was not prejudiced by his attorney's failure to object to it. The prosecutor's statement was an isolated reference, and it was set against both his and defense counsel's statements to the jury that the defendant had a right not to testify and that the burden of proof was on the State. In addition, the State's proof against Pewitte was significant: the hydrocodone pills were in baggies, not pharmacy bottles; they were found on a nightstand in Petitioner's bedroom next to cocaine, which was also packaged in plastic bags; drug paraphernalia (e.g., scales, spoons, plastic baggies) were found on the steps leading to Pewitte's bedroom; and large amounts of cash were discovered in the bedroom. *See e.g.*, *Mitchell v. Palmer*, No. 1:06-CV-

854, 2010 WL 395820, at \*29 (W.D. Mich. Jan. 28, 2010) (*Griffin* violation was harmless error under *Brecht* where the "[t]he evidence against [the § 2254] petitioner was overwhelming and the allegedly offending arguments by the prosecutor were isolated."); *cf.*, *Brecht*, 507 U.S. at 639 (finding harmless error in "[t]he State's references to petitioner's post-*Miranda* silence [where the comments] were infrequent" and "the State's evidence of guilt was, if not overwhelming, certainly weighty"); *Chapman*, 386 U.S. at 25 (*Griffin* violation not harmless where "the state prosecutor's argument and the trial judge's instruction to the jury *continuously and repeatedly* impressed the jury that from the failure of petitioners to testify . . . the inferences from the facts in evidence had to be drawn in favor of the State") (emphasis added)).  Therefore, the Tennessee Court of Criminal Appeals did not unreasonably conclude that there is no reasonable probability that the outcome of Pewitte's trial would have been different had counsel objected to the prosecutor's comment.  Accordingly, Claim 2D is **DENIED**.

For all of these reasons, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied

on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[4]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 26, 2019.

---

[4] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.